784 So.2d 769 (2001)
ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND
v.
Patricia A. JOHNSON, Assessor for the First Municipal District of the Parish of Orleans, and Louisiana Tax Commission.
No. 2000-CA-0297.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 2001.
Rehearing Denied May 15, 2001.
*770 Moise S. Steeg, Jr., Steeg and O'Connor, L.L.C., New Orleans, for Plaintiff/Appellant.
John D. Rawls, New Orleans, for Defendant/Appellee.
Court composed of Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY, III, Judge DENNIS R. BAGNERIS, Sr.
McKAY, Judge.
This appeal involves the assessment of property taxes for two parcels of immovable property owned by the Administrators of the Tulane Educational Fund (Tulane)[1] and located in the First Municipal District of the Parish of Orleans. The specific properties involved are 140 University Place and 139 Baronne Street (together these properties are known as 925 Common Street). On May 29, 1950, Tulane leased these properties, together with 146 S. Rampart Street, 165 University Place, and 1001 Tulane Avenue, to the Westminster Corporation. The term of the lease commenced on October 1, 1950, and it runs through September 30, 2049. The lease calls for an annual rental of $203,840.04, beginning on October 1, 1995 and ending on September 30, 2049. This amount was based on the rate of 6.5%, the value of the ground as if unimproved on the date of the appraisal.
The Assessor of the First Municipal District of the Parish of Orleans, Patricia A. Johnson, assessed 925 Common Street (absent improvements) at $2,388,750.00. Tulane appealed to the Board of Review, requesting an assessment of $1,620,000.00.[2] The Board of Review lowered the assessment to $1,780,000.00, and the Assessor appealed to the Louisiana Tax Commission. The Commission agreed with the Assessor and restored her original assessment of $2,388,750.00.
On March 3, 1997, Tulane filed a petition for mandamus against the Assessor and the Louisiana Tax Commission. The Commission entered its ruling on March 11, 1997. On March 14, 1997, Tulane filed petitions for appeal from administrative rulings on this and other cases. The Civil District Court for the Parish of Orleans consolidated these cases on April 21, 1997. However, the only issue still unresolved regards the tax assessment of 925 Common Street.
*771 Although the court below initially held for the Assessor, Tulane moved for a new trial, which the court granted. On hearing argument at the new trial, the court below reversed itself and ruled in favor of Tulane and reinstated the Board of Review's assessment of $1,780,000.00. It is from this judgment that the Assessor now appeals.
The issue before this Court is whether the trial court erred in reversing the Louisiana Tax Commission's and the Assessor's assessment of the property taxes for the subject property.
Judicial review of an agency's decision is a multifaceted function involving several categories: factual review, procedural review, statutory or constitutional review, and substantive review; the manifest error standard of review is used for review of fact-finding by the agency, but conclusions and exercises of agency discretion are subject to the arbitrariness test upon review.[3]Matter of Insulation Technologies, Inc., 95-1184 (La.App. 1 Cir. 2/23/96) 669 So.2d 1343, writ denied, 96-0749 (La.5/3/96) 672 So.2d 692. Where an administrative agency or hearing body is the trier of fact, the court will not review evidence before such body except for the purpose of determining if the hearing was conducted in accordance with authority and formalities of statute, whether the fact-findings of the body were supported by substantial evidence, and whether the body's conclusions from such findings were arbitrary or constituted abuse of the hearing body's discretion. Holiday Bossier Ltd. Partnership v. Louisiana Tax Com'n, 574 So.2d 1280, (La.App. 2 Cir.), writ denied, 578 So.2d 136, (La.1991).
It is the contention of the assessor and the Louisiana Tax Commission that the trial court should have used the market approach in determining whether the assessed fair market value was appropriate while Tulane contends that the income approach should have been used. La. R.S. 47:2321 defines fair market value as follows:
Fair market value is the price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances; it shall be the highest price estimated in terms of money which property will bring if exposed for sale on the open market with reasonable time allowed to find a purchaser who is buying with knowledge of all the uses and purposes to which the property is best adapted and for which it can be legally used.
La. R.S. 47:2323(c) sets forth the criteria for determining fair market value as follows:
The fair market value of real and personal property shall be determined by the following generally recognized appraisal procedures: the market approach, the cost approach, and/or the income approach.
(1) In utilizing the market approach, the assessor shall use an appraisal *772 technique in which the market value estimate is predicated upon prices paid in actual market transactions and current listings.
(2) In utilizing the cost approach, the assessor shall use a method in which the value of a property is derived by estimating the replacement or reproduction cost of the improvements; deducting therefrom the estimated depreciation; and then adding the market value of the land, if any.
(3) In utilizing the income approach, the assessor shall use an appraisal technique in which the anticipated net income is processed to indicate the capital amount of the investment which produces the net income.
In the instant case, the Assessor used the market approach to determine the fair market value of the property in question. This determination was affirmed by the Louisiana Tax Commission. Upon its review of the matter, the trial court initially agreed with Tulane's position that the income approach was "economically realistic". However, before rendering its original judgment, the trial court changed its mind and ruled for the Assessor. In its reasons for judgment, the trial court stated that: "the duty of the Assessor is to determine the intrinsic value of the property, as if it were unencumbered by any lease, using the criteria set forth in R.S. 47:2323C [sic]." After granting Tulane's request for a new trial, the trial court again changed its position and rendered judgment for Tulane.
Although the income approach and the market approach are both acceptable methods of determining the fair market value of a piece of property, there is no indication in the record before this Court that the decision made by the Assessor and the Louisiana Tax Commission to use the market approach was in any way wrong. While it is true that the property in question is encumbered by a disadvantageous lease, this lease was created by Tulane.
From our review of the record, it appears that the hearing held by the Louisiana Tax Commission was conducted in accordance with authority and formalities of statute. The fact-findings of the Commission were supported by substantial evidence. Furthermore, the Commission's findings are not arbitrary; nor do they constitute an abuse of discretion. Accordingly, we find that the trial court erred in reversing the Louisiana Tax Commission.
For the foregoing reasons, we reverse the judgment of the trial court and reinstate the judgment of the Louisiana Tax Commission.
REVERSED AND RENDERED.
NOTES
[1] The Administrators of the Tulane Educational Fund is a not-for-profit corporation organized on May 19, 1882. The corporation is with benefit of Internal Revenue Code 501(c)(3).
[2] The Board of Review consists of the New Orleans City Council sitting with the Assessor as a nonvoting consultant.
[3] We are aware that as of July 12, 1999, La. R.S. 49:964 has been amended where the term and concept of "manifestly erroneous" is no longer in the statute, but section 6 now reads as follows:

(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the first rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.